HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS AND MARTIN P.
GREY, VICE-CHANCELLORS.

---

ARCHIBALD A. HUTCHINSON

*v.*

ISAAC S. VAN VOORHIS and THOMAS B. HUTCHINSON.

1. Where the object of a bill in equity is to secure an accounting of a terminated agency, the agreement for which agency contemplated that the agent should be paid for his services, it is proper for the defendant agent, by cross-bill, to demand payment for his services and have such demand adjusted with the accounting, so that by its decree the court may give complete relief between the parties in respect of the agency.

2. Facts stated in an answer which are not material to a decision of matter put in litigation by the bill are impertinent, and, if reproachful, are scandalous.

439

On motion to strike out portions of the answer filed by the defendant Van Voorhis.

The bill alleges that on the 19th of April, 1888, the complainant, then of Pittsburgh, Pennsylvania, constituted the two defendants his attorneys in fact under a duly-executed power of attorney in writing, a copy of which is annexed to the bill as Schedule A and made part of it. That writing gives power to the defendants to demand, recover and receive moneys, debts, merchandise and effects due, payable or coming or belonging to Archibald A. Hutchinson; to sell his goods, merchandise and effects; to purchase for his account goods, merchandise, specie and other commodities and sell them again for his benefit; to ship and transport goods and barter and sell them, when at their destination, upon his account; to insure his property; to accept bills of exchange or orders, make and endorse notes, bonds &c., and execute drafts, checks, recognizances and bonds in legal proceedings &c. for his benefit; to grant, bargain, sell, exchange, assign or dispose of his bonds, mortgages, stocks and securities, executing in his name necessary instruments for that purpose; to purchase real estate, executing necessary contracts &c. touching the same; to mortgage his property; to settle and adjust his partnership accounts; to settle his disputes with others, submitting to arbitration when expedient; to substitute his securities for others; to compound for debts or demands owing to him; to execute releases, compromises, compositions &c.; to discharge debts due to him, to take possession of lands to which he should be entitled, to distrain for rent, to bring suits to enforce his rights, to confess judgments for him, to arbitrate and compromise suits, to receive securities impounded in legal proceedings, executing bonds of indemnity where necessary; "and generally to do and perform all matters and things, transact all business, make, execute and acknowledge all contracts, orders, deeds, writings, assurances and instruments" in and about his affairs, and substitute one or more attorneys under them.

The bill also alleges that the complainant agreed with the defendants that their compensation as his attorneys under the

power should be $1,200 per annum, and also that on the 28th day of April, in the same year, the complainant left America and went to Europe, where he remained until the 2d day of April, A. D. 1893, and that during his absence the defendant Van Voorhis acted under the power of attorney principally alone. It prays that the defendants may account as the agents of the complainant, and that payment of whatever balance may be found to be due to the complainant may be enforced in his behalf.

The defendant Thomas B. Hutchinson, who is the brother of the complainant, has appeared in the suit by solicitors, but has not answered. The defendant Isaac S. Van Voorhis was served with subpœna at Atlantic City. Upon motion in his behalf, based upon the affidavit of his physician that he is now of unsound mind and incapable of managing his affairs, Barton B. Hutchinson was appointed his guardian *ad litem* in this suit, and in his behalf has filed the answer which is now objected to.

The answer admits the making of the power of attorney referred to in the bill, and, at the same time, denies that any amount was agreed upon as the annual compensation of the attorneys, and, on the contrary, alleges that it was understood between Van Voorhis and the complainant that Van Voorhis was to be paid for his services whatever they should reasonably be worth. It further admits the absence of the complainant in Europe, and that Van Voorhis acted under the power of attorney, and, going further, it alleges that Van Voorhis had been the complainant's lawyer and confidential adviser, and that Thomas B. Hutchinson was his brother; that it was designed that Van Voorhis should be the real agent and that the brother should be co-agent, for the purpose merely of observing and inspecting the acts of Van Voorhis and keeping complainant advised with respect to them; also, that Van Voorhis acted alone in whatever he did, but with the full knowledge and approval of Thomas B. Hutchinson. It further alleges that while complainant was absent, Van Voorhis, from time to time, sent him itemized accounts in writing, which the complainant received as satisfactory and had every opportunity through his brother to verify. It then proceeds in this language:

"That at a time just preceding the said agency this complainant was so overwhelmed with litigation and other matters requiring legal services, as herein below more particularly specified, and was so alarmed by the danger therefrom to his property and character that he was unwilling to face the responsibility of his acts before the courts of Pennsylvania, and felt obliged to find some person to whom to entrust his property and the management thereof, and after finding such person to at once leave for Europe; and it was to this end that he appealed to this defendant, his attorney and trusted friend, to not only manage his law business, but to take charge of his property and other business as his attorney in fact; that it was to this end also that he prevailed upon this defendant to protect him and that he executed the instrument in the bill of complaint set forth; that this defendant was so conscious of the said dangers to the reputation and property of his friend, the complainant, and was driven to such extremities and incessant labor, worry and anxiety to find legitimate means of protecting him, and the burden of obligations assumed thereby was so greatly increased by the said agency, that after successfully defending him, the said complainant, in the courts in most of the matters herein below specified and in all of those which so endangered complainant's character and fortune, and after accumulating the profits hereinafter specified for the complainant, and being of a very sympathetic nature, the entire burden proved too great for his strength of body and mind."

It then proceeds to allege that in March, 1893, the defendant Van Voorhis was removed to a hospital for treatment and that, in 1895, his mind became permanently deranged and he became incapable of understanding any business or of making an account of the affairs of his agency and of giving instructions to that end. Also, that the complainant, by Thomas B. Hutchinson, had access to his books and papers and took some of them away, so that enough of them are not left to enable the defendant Van Voorhis to render an account. Also, that on the 6th of March, 1893, Van Voorhis and the complainant stated an account between them, which shows Van Voorhis to be indebted to the complainant in the sum of $21,166.75, which, by credits, is reduced to $10,727, which balance was agreed by them to be subject "to future litigation and adjustment," having reference to the claim of Van Voorhis for compensation. Also, that out of the balance the defendant is justly entitled to $6,300 for his service under the power of attorney. The answer then continues as follows:

Hutchinson *v.* Van Voorhis.

" That since the said 6th day of March, 1893, while this defendant remained (with the exception of a few months) within the jurisdiction of the courts of Pennsylvania, and while the witnesses necessary to his more complete defence were subject to the jurisdiction of said courts, and while records and data were complete, the complainant did not deem it wise to enter into any litigation in said state with this defendant concerning said amount in difference; and that when in the greatest extremities of bodily and mental illness this defendant was, under the instructions of his physician, removed to Atlantic City, in this state, for medical reasons and purposes, the complainant procured the service of the writ in this cause upon said defendant.

" The complainant, for the reasons above set forth, is not entitled to any further accounting, and the simulation of such right at a time when this defendant is, in the various ways above stated, deprived of all chances or possibility of such accounting, is for the purpose of embarrassing him and preventing him from enforcing his claim against the complainant for amount still due him for services rendered as attorney in fact and attorney-at-law as aforesaid. And for the purpose of this complaint in simulating a right to an accounting of matters of which the complainant is already fully informed, is to force the friends of this defendant to procure a waiver of the just and reasonable claims of this defendant in order to avoid such disturbance of this defendant in his enfeebled condition as may result fatally to him."

The answer asks that the defendant may have the same benefit from the account stated and his inability to account by reason of his loss of books and papers and his mental condition, as if he had pleaded these matters in defence. It then proceeds, by way of cross-bill, to first allege that the complainant is still indebted to the defendant in the sum of $6,300 for services under the power of attorney, and then to specify services as attorney-at-law, meriting enough consideration, according to his claim, to absorb the remainder of the balance of the $10,727, shown upon the alleged account stated, and to pray that such compensation as he merits for all such services as attorney in law and attorney in fact may be allowed and paid to him by the complainant.

The complainant now moves to strike out the portions of the answer which are above quoted as scandalous and impertinent, and to strike out so much of the answer as is by way of cross-bill, upon three grounds—*first*, because it " is not necessary to the defence of the said defendant;" *second*, because " the matters and things therein stated are alleged by the defendant and sought to

be used by him as a means of obtaining relief against the complainant in respect to a cause or causes of action distinct from, and wholly unconnected with, the complainant's cause of action;" and *third*, because " the matters and things in said answer, in the nature of a cross-bill alleged, afford no ground for equitable relief."

Mr. *Charles L. Carrick* (with whom was Mr. *B. K. Mc-Elheny, Jr.*, of the New York bar), for the motion.

Mr. *Richard V. Lindabury, contra.*

THE CHANCELLOR.

The bill contemplates an accounting for the dealings of two attorneys in fact under the power of attorney. That power did not contemplate that either of the agents appointed should perform the services of an attorney-at-law. Incident to the performance of their duties, they had authority to employ the subordinate agency of an attorney-at-law, but no direct agency of that kind was created by the instrument. The answer, on the other hand, alleges that the employment of the defendant Van Voorhis was a single matter in which he acted in two capacities as attorney in fact under the power of attorney and as attorney-at-law, and that in both those capacities he was to act alone, it being agreed that Thomas B. Hutchinson was merely to supervise, understand and approve that which should be done under the power of attorney.

Under this allegation of the answer, the power of attorney did not deal with the entire employment. Its office was not to circumscribe the limits of the employment, but to confer such power as could be conferred only by such an instrument and which was requisite to the performance of the duties required of Van Voorhis in his capacity as attorney in fact.

The answer denies that a fixed rate of compensation was agreed upon, and avers that the understanding was that Van Voorhis should be paid what his services should be reasonably worth.

The object of the cross-bill is to secure for him, in the account-

ing invoked by the complainant, payment for all his services, not only for those rendered as attorney in fact, but also for those rendered as attorney-at-law, and thus enable the court to decree complete relief to him as well as to the complainant in respect of the whole agency.

If the allegations of the answer be true, and I so take them upon this motion, I deem the filing of the cross-bill to be a necessary step by the answering defendant to obtain the complete determination of all the matters involved in the litigation which the original bill inaugurated. Such object is a legitimate use of a cross-bill. *Kirkpatrick* v. *Corning, 12 Stew. Eq. 136; Krueger* v. *Ferry, 14 Stew. Eq. 432; S. C. on appeal, 16 Stew. Eq. 295; Shearman* v. *Morrison, 149 Pa. St. 386.*

Proceeding to the consideration of the three portions of the answer which are objected to for scandal and impertinence, I find that the first of them alleges that the complainant, overwhelmed with litigation and other matters which required legal services, and alarmed by the danger therefrom to his character and estate, was unwilling, in person, to face the courts of his state, and felt obliged to secure the services of some one to whom he might entrust the management of his property and affairs and then go to Europe; that Van Voorhis had been and was his attorney and trusted friend, and hence he was appealed to in the emergency to assume the burden of that management, involving, as it did, both business and legal services; that Van Voorhis was conscious of the dangers and, actuated by his apprehension of them and by his sympathy with his friend, he bestowed such incessant labor and was subjected to such worry and anxiety in the successful performance of the duties required that he broke down in body and mind.

It is insisted that this passage of the answer is material and relevant upon the question of the value of the services which Van Voorhis rendered. In *Woods* v. *Morrell, 1 Johns. Ch. 103,* Chancellor Kent said: "As to impertinent matter, the answer must not go out of the bill to state that which is not material or relevant to the case made out by the bill. Long recitals, digressions, stories, conversations and insinuations tending to

scandal are of this nature. Facts not material to the decision are impertinent and, if reproachful, are scandalous; and perhaps the best test by which to ascertain whether the matter be impertinent is to try whether the subject of the allegation could be put in issue and would be matter proper to be given in evidence between the parties." *Wilkinson* v. *Dodd, 15 Stew. Eq. 234.*

Applying the test thus stated I think that it is clear that the delicacy and difficulty of the services rendered and the peculiar fitness of Van Voorhis to render them, his devotion to them and the success of his efforts, are all matters pertinent to an inquiry as to the value of these services. Although I think that the pleader might safely have omitted this portion of the answer or might have stated its substance in language which would more succinctly and clearly and less reproachfully have defined the character of the services, I am of opinion that the motion to strike out in this particular should not prevail.

The remaining portions of the answer quoted should be stricken out. Under the test above applied, they are both scandalous and impertinent. They allege a baseness of purpose in the complainant which is not a defence, and complain of a delay in prosecution which was contemplated between the parties in March, 1893, when an unsettled balance was admitted to exist, as a matter for future litigation, and which does not present a case of laches which should induce this court to withhold from the complainant such relief as he may be entitled to at its hands. The allegation of the answer is that in March, 1893, this reservation for future litigation was agreed upon, and that in the same month Van Voorhis went to a hospital because of ill-health, which has resulted in the permanent derangement of his mind. It would seem to be a legitimate inference from such allegations that delay in litigation was contemplated by the parties and suffered by the complainant to admit of the recovery of Van Voorhis, and was not terminated until the impossibility of that recovery became manifest, and was not to subserve the base and dishonest purpose suggested by the answer.

The motion will be denied as to the first portion of the answer objected to and the portion by way of cross-bill, but as to the other portions of the answer will be granted.