## EDWARD M. DAVIS

### v.

### HENRY L. DAVIS and EDWARD H. MURPHY.

1. The rule is that, in pleading fraud, the facts which are relied on as con-stituting the fraud, must be stated with sufficient particularity to enable the person charged to deny and disprove or explain them.

2. Where, in the pleading, the existence of a confidential relation between the parties is alleged from which a presumption against the validity of the instrument or transaction complained of arises, it is not necessary to particu-larize acts of bad faith or imposition, for the burden rests upon the other side to allege and prove circumstances which will overcome the presumption.

3. Where, however, such relation is alleged, and at the same time other allegations in the pleading show that its influence terminated prior to the transaction complained of, the rule first stated applies.

On demurrer to bill.

The bill alleges that the complainant is the child of George Davis, Jr., and Sarah, his wife, and was born November 20th, 1868; that his father died in 1874, and his mother died in 1877,

both intestate; that his paternal grandfather became his guardian, and also the administrator of his mother's estate, but died in July, 1879, before the mother's estate was settled; that in August, 1881, the defendant Henry L. Davis, an uncle, became the complainant's guardian by appointment of the surrogate of Kings county, New York, and in September, the same year, by appointment by the same authority, also became administrator of the father's estate, and in August, 1884, by appointment of the surrogate of Westchester county, New York, became the administrator *de bonis non* of the mother's estate; that in May, 1894, being more than twenty-five years of age, the complainant, through the instrumentality of the defendant Edward H. Murphy, a lawyer practicing in the State of New York, compelled an accounting by Henry L. Davis, as administrator of his father's estate, before the surrogate of Kings county, thereby ascertaining him to be chargeable with a balance of $628, in the complainant's favor, and in a similar proceeding before the surrogate of Westchester county, ascertained him to be chargeable as administrator *de bonis non* of the mother's estate, with a balance of $5,080, also in his favor; that after these accountings, in November, 1894, the complainant proposed to commence further legal proceedings to compel the defendant Davis to account for his guardianship and pay whatever balance there might be in his hands; that in furtherance of this project, in November, 1894, he entered into an agreement with the defendant Murphy to pay him forty per cent. of any money that might be recovered from the defendant Davis in the proposed litigation; that at this juncture in the proceedings, the defendant Davis sought the complainant and offered to amicably account with him and satisfy his just demand with respect to the guardianship; that without the knowledge of Murphy, who is recited in the agreement presently mentioned to be opposed to any amicable settlement to the guardianship accounts, the complainant entered into an accounting with the defendant Davis, who, using the language of the bill,

"displayed unto your orator certain accounts and statements of various amounts, which he claims to be true, just and accurate accounts and items covering and embracing the management of the estate in his trust and as guardian of your orator;"

Davis *v.* Davis.

that relying upon such statements and assurances, the complainant agreed with Davis upon the sum of $565 as the amount due to him, and thereupon, by writing under his hand and seal, agreed to take payment of the same as follows, to wit, $200 in cash, and $10 each month until the balance of $565 should be paid, provided that Murphy should approve of the settlement, and if he should not, the sixty per cent. of so much of the $565 as should remain unpaid, and also that he would not sue Davis, and would forfeit any unpaid balance at any time he might do so ; that the $200 was paid to him upon the execution of the agreement ; that Murphy did not approve the settlement ; that the complainant and Davis were sued by Murphy, and that upon such suit being brought, the complainant, using the language of the bill,

" caused inquiries to be made into the truth of the statements made unto him by the said defendant Henry L. Davis; * * * that he ascertained the said statement to be wholly and entirely inaccurate, untruthful and false ; that instead of the sum of $565 being the amount due unto him by said defendant Henry L. Davis as general guardian, that there is a larger amount, to wit, the amount of $4,000 and upwards due unto him, by the said defendant Henry L. Davis, and that the agreement of February 16th, 1895, was obtained from him by false and fraudulent statements " &c. ;

that thereupon the complainant demanded of Davis that the agreement of settlement be canceled, but that the bill did not allege that the complainant offered to repay him the $200 he had received.    The bill .prays that the agreement of settlement may be decreed to be fraudulently obtained and to be void, and that the complainant may have discovery and an accounting.

The demurrer challenges the sufficiency of the allegations in the bill to properly charge fraud in the agreement of settlement.

*Mr. Isaac S. Taylor*, for the demurrant.

*Mr. John J. Joyce*, for the complainant.

THE CHANCELLOR.

Fraud is a conclusion of law upon facts.    In pleading it, the rule is, that it is not sufficient to charge it in general terms. The pleadings must point out and state the facts which are

relied on as constituting it with enough particularity to enable the person charged to deny and disprove or explain those facts. He has the right to know in advance of his answer and the production of his proofs just what he will be required to meet. *Story's Eq. Pl.* § *251; Smith* v. *Wood, 15 Stew. Eq. 567.* But the principle which underlies this rule is inapplicable where a presumption against the instrument or transaction complained of arises from the existence of a confidential relation between the parties, under the influence of which relation the agreement, gift, release or settlement was made, for such presumption will throw the burthen upon the defendant to affirmatively show that the dealing and its outcome were free from every species of imposition. The presumption alluded to conspicuously arises where the transaction is between a guardian and his ward under the influence which usually attends that relation. Professor Pomeroy (*2 Pom. Eq. Jur.* § *961*) says of dealings in such a relation :

" The relation is so intimate, the dependence so complete, the influence so great, that any transaction between the two parties or by the guardian alone, through which the guardian obtained a benefit, entered into while the relation exists, are in the highest degree suspicious, and the presumption against them is so strong that it is hardly possible for them to be sustained. \* \* \* This influence is presumed to last while the guardian's functions are to any extent still performed, while the property is still at all under his control, and until the accounts have been finally settled. It follows, therefore, that any conveyance, purchase, sale, contract and especially gift, by which the guardian derives the benefit, made after the termination of the legal relation but while the influence lasts, is presumed to be invalid and voidable. The burthen rests heavily upon the guardian to prove all the circumstances of knowledge, free consent, good faith, absence of influence which alone can overcome the presumption."

It would appear, then, where fraud is charged in a dealing which appears to have been between a guardian and ward, in which dealing the guardian has profited, if it does not affirmatively appear by the bill that the influence of the relationship has been broken or is lost, that the presumption which arises against the negotiation should relieve the ward from the necessity of particularizing the facts which exhibit the fraud, for the

Davis v. Davis.

burthen is upon the guardian to affirmatively show that the transaction was, in all its particulars, just and right.

The substance of the case presented by the bill here is that, after the complainant had arrived at mature age, and had become emancipated from all personal control of his guardian, and had assumed a hostile attitude towards that guardian by twice successfully taking legal proceedings against him to enforce his rights, and, at the very time of making the settlement and agreement complained of, was threatening another litigation with him, he met his guardian and proceeded to amicably negotiate upon the subject of the proposed litigation.

It is not asserted that the influence of the old relationship still existed. The case made is, that one of mature years, capable of self-protection, as is evidenced by past litigation with the guardian, and who dealt in a hostile attitude, threatening another litigation, was deceived by false statements and accounts which he does not identify or particularize.

His complaint is not that there was undue influence or fraud in the execution of the agreement, but that the defendant deceived him by false accounts and statements. He alleges that since the negotiation he has ascertained by inquiry that the accounts and statements so vaguely complained of were wholly and entirely inaccurate and untruthful, and that instead of $565 a much larger amount is due, which he hazards the guess may be more than $4,000. I think that he should at least be required to identify the accounts and statements which he claims to have discovered to be wholly false. There is no assertion of his inability to make such an identification. On the contrary, his allegation that he has ascertained that they were entirely and wholly false, predicates a knowledge of them. To require him to identify them under such circumstances will not be the exaction of an impossibility which may deprive him of justice, but will be obedience to a dictate of common justice to the defendant, who should be fairly apprised of that which he is to explain or deny or, admitting, deny the falsity of.

I will sustain the demurrer, with costs. The bill may be amended, if the complainant so desires.